IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN ADMIRALTY

AXIS REINSURANCE COMPANY

    Plaintiff

Case No.: 4:08cv168-WS/WCS

v.

JAMES D. HENLEY

    Defendant.

_____/

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff/Counter-Defendant, Axis Reinsurance Company ("Plaintiff"), by and through undersigned counsel, pursuant to Local Rule 56.1, files this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment against Defendant/Counter-Plaintiff James D. Henley ("Defendant").

1. The vessel involved in this matter is a 2004 34-foot Fountain Center Console motor vessel with three 225-horsepower engines (the "Vessel").

2. On or about February 5, 2007, Defendant applied for insurance for the Vessel with the Plaintiff over the phone through the John Darr Agency, a broker acting on behalf of the Defendant. *See* Deposition of James D. Henley, attached hereto as **Exhibit A**, at 103:6-104:17; Affidavit of Howard Reiff, attached hereto as **Exhibit B**, at ¶ 6.

3. Per the Plaintiff's application process, the Defendant was specifically asked whether the Vessel would be used for commercial charter purposes. *See* **Exhibit A** at 104:6-17; **Exhibit B** at ¶ 5.

4. Defendant represented to the brokers at the John Darr Agency the Vessel would used for recreation only. *See* **Exhibit A** at 104:7.

5. Plaintiff does not insure any commercial charter vessels. *See* **Exhibit B** at ¶ 11.

6. Based on the Defendant's representations, Plaintiff agreed to issue a contract of insurance (the "Contract") to Defendant, insuring the Vessel. *See* **Exhibit B** at ¶ 7; *See* Contract attached hereto as **Exhibit C**.

7. The Contract is an all risk marine insurance policy that contains no traditional *Inchmaree* clause. *See* **Exhibit C**.

8. Prior to leaving the dock on the morning of January 19, 2008, Defendant failed to physically check if the Vessel's bilge pumps were operating and relied solely on light switches on the console dashboard as an indication the pumps were working. He was unaware one of the bilge pumps were missing. *See* **Exhibit A** at 40:8-9; 55:7-22.

9. On the morning of January 19, 2008, Defendant took three persons fishing on the Vessel from the River Haven Marina in Steinhatchee, Florida out into the Gulf of Mexico. At approximately 1:00 p.m., the Vessel took on several feet of water at the stern. *See* **Exhibit A** at 46:24; 49:14. The Defendant asked the passengers to bail the water out of the Vessel with five-gallon buckets. *Id.* at 46:13.

10. At approximately 2:00 p.m., Defendant called a towing service to escort the Vessel back to the shore. *Id.* 49:12-51:2. The towing vessel never passed a line to the Vessel or

assisted Defendant in pumping out the Vessel, but merely escorted back to Steinhatchee. *See* **Composite Exhibit "A"** to the Affidavit of John Smith, attached hereto as **Exhibit D** at 1 of 4.

11. Defendant dropped off his passengers at the River Haven Marina at approximately 3:00 p.m. *Id.* at 51:3-4. The Defendant then docked the Vessel behind his house and left it in the water. *Id.* at 59:4-7. Before leaving the boat, Defendant checked the stern hatch and found the Vessel still had water in the bilge. *Id.* at 56:7-12.

12. At approximately 4:30 p.m., the Vessel experienced weather consisting of thunder, lightning, and heavy rain. *Id.* at 59:1-2; 60:23-25. The rainfall in the Steinhatchee area for the day of January 19, 2008 was 1.79 inches. *See* **Composite Exhibit "A"** to **Exhibit D** at 4 of 16.

13. At approximately 5:00 p.m., the Vessel listed to port and partially sank while secured to the dock. *See* **Exhibit A** at 60:23-25; 61:1-20. The Defendant watched the Vessel list, but did nothing to prevent the sinking. *Id.* at 61:11-20.

14. The Vessel's bilge flooded through the ungasketed lazarette hatchway and the bilge pump discharge hoses. The Vessel's deck scuppers, clogged with trash, prevented proper drainage and increased bilge water accumulation. *See* **Composite Exhibit "A"** to **Exhibit D** at 3 of 16.

15. The Vessel's starboard bilge pump had been removed prior to the voyage on January 19, 2008, and the open end of its discharge hose had never been plugged. The open hose allowed water to siphon into the bilge. *Id.* at 5 of 16.

16. The Vessel's port bilge pump was inoperable, and allowed water to siphon through its discharge hose into the bilge. *Id.* at 5 of 16; 7-8 of 16.

17. The sinking was not an accident, but was caused by wear and tear over time and a lack of vessel maintenance. *Id.* at 14 of 16. A seaworthy vessel with clear scuppers and operable bilge pumps would easily sustain rainwater flooding in an amount of 1.79 inches. *Id.* at 4 of 16. The vessel was unseaworthy prior to its voyage on January 19, 2008. *Id.* at 14 of 16.

18. The Defendant failed to take reasonable steps to save the Vessel when it reached the dock. *Id.* Defendant could have hauled the Vessel out of the water or ensured the Vessel was dewatered. *Id.*

19. After filing a claim with the Plaintiff for the loss, adjuster Christine Janke spoke with Defendant on January 21, 2008, and asked whether the Vessel had been used commercially, to which the defendant replied the Vessel was strictly recreational. *See* Affidavit of Christine Janke attached hereto as **Exhibit E**, at ¶ 5.

20. After speaking with the Defendant on January 21, 2008, Ms. Janke viewed a page from the Defendant's website, saltwaterfishn.com, which advertised the Vessel for offshore fishing charters at a rate of $850 per day. *See* **Exhibit E** at ¶ 6; **Exhibit A** at at 92:11-97:25; *see also* webpage printout attached as **Exhibit 1** to **Exhibit E**.

21. The Defendant reviews and approves all changes to the website saltwaterfishn.com, which he has owned for approximately three years. *See* **Exhibit A** at 17:5-8; 17:23-18:5; 18:19-19:4.

22. After filing the claim for the loss, the Defendant altered the website – removing all references to offshore fishing charters and the Vessel. **Exhibit E** at ¶ 7; **Exhibit A** at 100:24-101:3.

23. Had any of the Plaintiff's underwriters been aware of Defendant's advertising the Vessel for offshore fishing charters, the Plaintiff would have declined to enter into the Contract with the Defendant. *See* **Exhibit B** at ¶ 11.

24. On November 14, 2008, discovery closed in this case per this Court's order entered October 7, 2008.

25. Defendant has neither retained an expert witness to testify in this matter nor provided Plaintiff with an expert report as required by Federal Rule of Civil Procedure 26(a)(2)(B)-(C).

Respectfully submitted,

/s/ Jules V. Massee

**JULES V. MASSEE**
Florida Bar No.: 0041554
**ROBERT B. BIRTHISEL**
Florida Bar Number: 906654
Hamilton, Miller & Birthisel, LLP
100 S. Ashley Drive, Suite 1210
Tampa, Florida 33602
Tel: 813-223-1900; Fax: 813-223-1933
rbirthisel@hamiltonmillerlaw.com
jmassee@hamiltonmillerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 26, 2008, a true and correct copy of the foregoing was sent via CM/ECF to David F. Pope, Banker Lopez Gassler P.A., 501 East Kennedy Blvd., Ste. 1500, Tampa, Florida 33602, attorney for Defendant/Counter-Plaintiff.

/s/ Jules V. Massee
Attorney